UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

STEVEN DIONNE SCOTT,

    Plaintiff,

v.                                                             Case No. 20-cv-1205-pp

JOHN KIND, JAY VAN LANEN,
ANDREW WICKMAN, KEVILYN CROCHIERE,
LT. MCCRORY, DYLAN RADTKE,
and MICHELLE HAESE,

    Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 5), DENYING AS MOOT PLAINTIFF'S MOTION TO USE FUNDS FROM RELEASE ACCOUNT (DKT. NO. 6), SCREENING COMPLAINT AND DISMISSING CASE**

---

Plaintiff Steven Dionne Scott, an inmate at Green Bay Correctional Institution who is representing himself, filed a complaint alleging that the defendants violated his civil rights under 42 U.S.C. §1983 by sending him to the restrictive housing unit on an allegedly false conduct report without allowing him to present evidence at his disciplinary hearing. Dkt. No. 1. This order resolves the plaintiff's motions to proceed without prepaying the filing fee, dkt. no. 5, and to use funds from his release account to pay the initial partial filing fee, dkt. no. 6, and screens the complaint, dkt. no. 1.

**I.    Motion to Proceed without Prepaying the Filing Fee (Dkt. No. 5) Motion to use Funds from Release Account (Dkt. No. 6)**

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to let an incarcerated plaintiff proceed with his case without prepaying the filing fee if he meets certain conditions. One of those

1

conditions is that the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b). Generally, once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On August 24, 2020—over two weeks after the court received his complaint—the court received both the plaintiff's request to proceed in district court without prepaying the full filing fee, dkt. no. 5, and his petition to use prison release account to pay initial filing fee, dkt. no. 6. That same day, the court ordered the plaintiff to pay an initial partial filing fee of $19.97 by September 14, 2020. Dkt. No. 8. In its order, the court told the plaintiff that if he could not pay that initial partial filing fee, he was responsible for making arrangements with prison authorities to pay the remainder of the filing fee from his release account. Id. at 3. The court did not, however, specifically rule on the plaintiff's petition to use his prison release account to pay the initial filing fee.

The court received the $19.97 initial partial filing fee on September 21, 2020. The court will grant the plaintiff's request to proceed without prepaying the filing fee and will allow him to pay the remainder of the filing fee over time in the manner explained at the end of this order. The court will deny as moot the plaintiff's petition to use the funds in his release account to pay the initial partial filing fee.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the Prison Litigation Reform Act (PLRA), the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court

2

must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

3

B.  Allegations in the Complaint

The plaintiff alleges that on November 3, 2019 at approximately 8:00 p.m., defendant Lt. McCrory removed him from Dorm DADA-Bed 57 and placed him in temporary lock up in the restricted housing unit (RHU) for allegedly violating "Wisconsin Administrative Code, W.A.C. §303.30—Soliciting an Employee." Dkt. No. 1 at ¶2. The next day, defendant Lt. Wickman served Conduct Report #56196 (CR #56196). Id. at ¶3. On November 8, 2019, the plaintiff met with his staff advocate, Weber (not a defendant), and clearly stated why he requested video from November 1, 2019: "The video recording of 11/1/19, would show I was not at the Sally Port, where OFC Crochiere alleges at 6 pm on that day." Id. at ¶¶3, 5.

The same day—November 8, 2019—defendant Security Director John Kind "refused to allow the video requested as evidence, to be allowed at the hearing claiming 'security concerns and the video does not have audio,' per DOC § 303.87(2)(B-1)." Id. at ¶4.

The plaintiff says that on November 14, 2019 at the major disciplinary hearing against him for CR #56196, defendant Capt. Van Lanen "found him guilty of a charge, in which it was 'more than likely than not he did make sexual statements to the staff member.'" Id. at ¶5. According to the plaintiff, Van Lanen stated, "I reviewed and considered the conduct report, the offender's statement. The conduct report and the advocate's statement and the video footage." Id. at ¶6. The plaintiff received fourteen days in the restricted housing unit. Id. at page 7.

The plaintiff appealed to the Warden's Office on November 20, 2019, and on January 2, 2020, the Warden's Office affirmed the hearing officer's decision. Id. at ¶7. On January 7, 2020, the plaintiff filed a grievance through the inmate

4

complaint review system (ICRS) "to appeal the procedural deprivation of the W.A.C. in the process of the conduct report #56196." Id. The ICRS dismissed the plaintiff's grievance on January 3, 2020, and the Warden's Office upheld the decision. Id. at ¶8. On January 31, 2020, the plaintiff appealed to the Corrections Complaint Examiner (CCE). Id. While the CCE upheld the decision, the Office of the Secretary overturned the dismissal of the plaintiff's grievance and "agreed the plaintiff had a due process right to the video footage." Id. at ¶9.

The plaintiff alleges that Crochiere violated his due process rights by fabricating CR #56196 that caused him to be taken to the restricted housing unit, and that McCrory violated his due process rights by being aware of these facts and not intervening "due to the fact that all CR's are reviewed before they are served to Inmates." Id. at ¶13. The plaintiff also alleges that Kind violated his due process rights by denying him the video footage; he says Kind was aware that inmates have the right to call witnesses and request exculpatory evidence at due process hearings. Id. at ¶14. Finally, he states that defendants Van Lanen, Wickman, Radtke and Haese were aware of "the Due Process Rights, when John Kind would not allow the video footage . . . [s]till they found the Plaintiff, guilty of the offense." Id. at ¶15.

The plaintiff seeks compensatory damages in the amount of $250,000 and punitive damages in the amount of $500,000. Id. at page 7.

C. Analysis

The plaintiff's claims focus on two alleged violations of his due process rights under the Fourteenth Amendment. First, he alleges that Crochiere's fabrication of CR #56196 and McCrory's failure to intervene violated his rights. Second, he claims that Kind's refusal to allow the video evidence at his disciplinary hearing violated his due process rights. He then alleges that

5

various prison administrators who reviewed both his appeal of the disciplinary hearing and related grievance violated his rights by affirming both the use of the fabricated CR and Kind's decision to disallow the video in his disciplinary hearing.

The Fourteenth Amendment prohibits state officials from depriving any person of life, liberty or property without the due process of law. U.S. Const. Amend XIV. The plaintiff alleges that he was deprived of his liberty when he was placed in RHU for fourteen days. Dkt. No. 1 at page 7. "[A]n inmate's liberty interest in avoiding segregation is limited." Hardaway v. Meyerhoff, 734 F.3d 740, 743 (7th Cir. 2013). "Whether a prisoner has a liberty interest implicated by a special confinement relies on whether the confinement imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Id. (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). Under Sandin, two weeks in segregation "at least in the absence of exceptionally harsh conditions," does not give rise to an atypical and significant hardship. Id. See also Leslie v. Doyle, 125 F.3d 1132 (7th Cir. 1997) (holding that fifteen days in segregation was not atypical and significant under Sandin's standard). The plaintiff has not stated a claim under the Fourteenth Amendment because he has not stated facts demonstrating that he was denied his liberty as the Seventh Circuit Court of Appeals defines it.

Even if the plaintiff had stated a denial of a protectable liberty interest, his allegations would not state a claim. Where a plaintiff has a protectable liberty interest, he is entitled to due process before that interest is taken away. Lagerstrom v. Kingston, 463 F.3d 621, 624 (7th Cir. 2006). In the context of a disciplinary hearing, "due process requires that [the plaintiff] receive advance written notice of the charges, the chance to present testimony and

6

documentary evidence to an impartial decisionmaker, and a written explanation, supported by at least 'some evidence' in the record for any disciplinary action taken." Id. (internal citations omitted). The plaintiff's allegation that Kind refused to allow the video to be admitted into evidence, even though that decision eventually was overturned by the Office of the Secretary, is not sufficient to allege that the plaintiff was denied the minimal procedures to which he is entitled. Id. (finding that even though a state court overturned the correctional institution's decision to disallow witnesses at the plaintiff's disciplinary hearing, it "does not mean that the hearing failed to satisfy minimal procedural requirements.")

As for the allegedly fabricated conduct report, a plaintiff's protection against such false charges is "generally found in the procedures mandated by due process." Id. at 625. In other words, the law assumes that the institution's disciplinary procedures will protect inmates from false or fabricated allegations. Only where "a prison official's conduct might be so extreme that 'no subsequent procedural fairness could obscure or heal it'" can a plaintiff state a claim under the principles of substantive due process. Id. A prison official's fabrication of a conduct report "can amount to a violation of substantive due process if the charges were in retaliation for the exercise of a constitutional right." Black v. Lane, 22 F.3d 1395, 1402-03 (7th Cir. 1994). The plaintiff does not allege that Crochiere fabricated the report and/or that McCrory failed to intervene as retaliation for the plaintiff's exercise of a constitutional right. He does not say why he believes that Crochiere fabricated the conduct report.

The court also notes that with regard to the remaining defendants—Van Lanen, Wickman, Radtke and Haese—the plaintiff has alleged only that they acted as reviewing authorities of disciplinary procedures or complaint

7

examiners. Prison officials who deny grievances "but who otherwise did not cause or participate in the underlying conduct" cannot be held liable under §1983. See Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011) (citing George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007)). Similarly, prison officials who are involved with disciplinary proceedings are not subject to liability unless they are aware that the proceedings are unconstitutional. See Wilson v. Greetan, 571 F.Supp. 948, 955 (W.D. Wis., 2007). The plaintiff has not alleged that the remaining defendants caused or were involved in the fabrication of the conduct report or the decision to exclude the video as evidence. Nor does he allege that these defendants knew that that conduct was unconstitutional.

The plaintiff has not stated a claim upon which this court may grant relief and the court will dismiss the complaint.

### III. Conclusion

The court **GRANTS** the plaintiff's motion to proceed without prepaying the filing fee. Dkt. No. 5.

The court **DENIES as moot** the plaintiff's motion to use his release funds to pay the initial partial filing fee. Dkt. No. 6.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The clerk will enter judgment accordingly.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$330.03** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's

trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 23rd day of November, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**